## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA

      Plaintiff,

vs.                                 CASE NO. 11-20749

JONAS ROGERS                  HON. LAWRENCE P. ZATKOFF

      Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 18, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion *in limine* to Bar Alleged Prior Acts [dkt 12]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L. R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendants' Motion to Bar Alleged Prior Acts is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A. THE PRESENT INDICTMENT

On December 7, 2011, Defendant was charged in a two-count indictment with (Count I) Conspiracy to Commit Wire Fraud under 18 U.S.C. § 1349, and (Count II) Money Laundering under 18

U.S.C. § 1957. On April 24, 2012, a first superseding indictment was obtained adding a third Count for Aggravated Identity Theft under 18 U.S.C. §§ 2 and 1028A. The Government claims that Defendant convinced a "straw buyer"—referred to as "VB"—to purchase a home located at 5328 Woodland Hills, West Bloomfield, Michigan ("the Property"). Defendant allegedly helped VB secure a loan to purchase the Property by listing false information on VB's credit application regarding her employment and salary.

After having participated in VB's purchase of the Property, Defendant then informed VB of a prospective buyer for the Property— referred to as "M.J.F. Jr."—who would purchase it for $1.1 million. According to the Government, however, this buyer was using the stolen identity of an individual with a similar name "MF"—without the middle initial "J" or the suffix "Jr."—obtained with the help of Defendant. M.J.F., Jr. eventually obtained the loan and he and VB executed the sale of the Property. VB received funds from the sale, which she eventually paid to Defendant via cash and check payments, the latter made out to Defendant's mother.

Defendant denies that he knowingly assisted in any activities to defraud.

**B. DEFENDANT'S ALLEGED PRIOR ACT**

According to the Government, Defendant was previously involved in identity theft in 1997 and 1998 (the "Prior Act"). During that time period, the identities of "T.J." and "J.C." were stolen and used to procure automobile and consumer credit loans. The Government claims that individuals claiming to be T.J. and J.C. were introduced to car dealerships by Defendant, and participated in submitting false credit applications to the dealership to purchase vehicles. The false credit applications listed J&L Diversified ("J&L")—a company affiliated with Defendant—as the employer of T.J. and J.C.

Additionally, an individual claiming to be T.J. also applied for consumer and business credit accounts. Once these accounts were open, credit cards were variously issued to T.J., J&L, Defendant, and

Defendant's fiancé and mother, and were subsequently used to make several thousand dollars worth of purchases. T.J.'s card, however, showed no activity.

The Government further states that an FBI investigation and subsequent analysis found Defendant's fingerprint on one of the false credit applications, despite his denial to law enforcement that he had ever touched the application. Another FBI investigation found that the signature on another false application was "possibly" inscribed by Defendant.

The Government indicates that part of the Prior Act evidence is a statement Defendant provided to the FBI, confirming the following key facts in the investigation: that Defendant was an owner of J&L Diversified; that he met "T.J." in the summer of 1997 when "T.J." supposedly said he could help Defendant obtain credit and purchase equipment for his company; that "T.J." told Defendant that "T.J." was having marital problems and needed to conceal certain things from his wife; that "T.J." resided with Defendant but vanished during the spring of 1998; that "T.J." applied for credit cards in the name of J&L and that credit cards from that account were issued to "T.J.," Defendant, and Defendant's mother and fiancé; that Defendant made several business and personal purchases on his card; that Defendant was unable, however, to explain to the FBI why no charges were ever made on T.J.'s card; that Defendant received MBNA Visa cards for which "T.J." had applied; and that Defendant introduced "T.J." to a Ford car dealership where he purchased two trucks and a van.

## C. THE DISPUTED EVIDENCE

The Government seeks to call two witnesses at trial to substantiate its claims regarding Defendant's involvement in the Prior Act. First, the Government plans to call the real T.J. to testify that in 1997 and 1998, a van, two pickup trucks, and credit cards were all obtained without his knowledge and through illicit use of his identity. The Government also plans on calling FBI agent Kathleen Kennedy ("Kennedy"), who was responsible for the investigation into T.J.'s identity theft and will testify as to that investigation. The

Government's stated purpose for introducing the Prior Act evidence is to show Defendant's intent, plan, identity, knowledge, and absence of mistake with respect to the charges currently brought against him.

Defendant challenges the Government's proferred evidence, arguing that no reasonable jury could find that Defendant committed the Prior Acts, and that evidence of the Prior Acts is not relevant and is more prejudicial than probative.

### III.  LEGAL STANDARD

Federal Rule of Evidence 404(b) allows the Government to introduce evidence of "other crimes, wrongs, or acts" committed by the defendant so long as the evidence is not used merely to show propensity and if it "bears upon a relevant issue in the case." *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). The Rule contains a non-exhaustive list of possible purposes: "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Such evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." *Id.*

Before admitting evidence under Rule 404(b), the Court must first make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008) (quoting *United States v. Lattner,* 385 F.3d 947, 955 (6th Cir. 2004)). Next, the Court uses a four-step inquiry to determine admissibility:  (1) the proponent of the evidence must identify the specific purpose of the "other acts" evidence; (2) the district court must decide whether the identified purpose is at issue in the case; (3) if the purpose is at issue, the district court must weigh the probative value against the danger of unfair prejudice; and (4) if the district court admits the evidence, it must then clearly instruct the jury as to the specific purpose for which the jury may consider the evidence. *United States v. Merriweather*, 78 F.3d 1070, 1076–77 (6th Cir. 1996).

### IV.  ANALYSIS

**A. Occurrence of the Prior Bad Act**

As noted, a threshold matter for the Court is whether there is sufficient evidence to show that Defendant committed the Prior Act. *Bell,* 516 F.3d at 441 (quoting *Lattner,* 385 F.3d at 955). The Government satisfies this burden if a jury can reasonably conclude that the Prior Act occurred and that Defendant was involved. *Id.* (citing *Huddleston v. United States,* 485 U.S. 681, 689 (1988)).

The Court finds that there is sufficient evidence to support a jury finding that Defendant was involved in the Prior Act. The evidence the Government proposes to introduce, when viewed as a whole, can reasonably be construed as implicating Defendant in the Prior Act:

    a)  persons claiming to be T.J. and J.C. were introduced to car dealerships by Defendant and submitted false credit applications to those dealerships;

    b)  T.J. and J.C. listed J&L as their employer on the false credit applications;

    c)  An individual claiming to be T.J. also applied for commercial credit cards in the name of J&L, and later obtained credit cards under these accounts for Defendant, and Defendant's mother and fiancé;

    d)  Defendant used these cards to make purchases exceeding several thousands of dollars, though T.J.'s card was apparently never used;

    e)  an FBI investigation found Defendant's fingerprint on one of the false credit applications;

    f)  another FBI investigation found that the signature on a false credit application was "possibly" inscribed by Defendant; and

    g)  Defendant provided a statement to the FBI confirming many of the key facts in the investigation.

Defendant does not appear to deny these claims by the Government, stating instead that Defendant had no reason to believe that the person he knew as "T.J." had in fact stolen the real T.J.'s identity. Defendant also states that the mere fact that his fingerprint was on a fraudulent credit application shows nothing, since there were other fingerprints on the application. Last, Defendant argues that the FBI investigator's conclusion that the signature on another fraudulent credit application was "possibly"

Defendant's was insignificant, reasoning that it was "just as 'possible' that it was not" Plaintiff's handwriting.

The Court notes again, however, that the standard is whether a jury could reasonably find that Defendant was involved in the Prior Acts—there need not be evidence sufficient to find guilt beyond a reasonable doubt. The Court therefore finds that a jury could reasonably find that Defendant was aware that the person he knew as T.J. was using a stolen identity. As such, the Court turns next to the four-step analysis articulated by the Sixth Circuit in *Merriweather*.

## B. SPECIFIC PURPOSE OFFERED BY THE GOVERNMENT

The Government argues that the Prior Act evidence is offered to prove Defendant's general intent to commit the charged offenses; to prove his specific intent to defraud; to show his guilty knowledge of the crimes; and to show a plan or consistent method of operation. The Government also argues that the Prior Act evidence diminishes Defendant's defenses of lack of knowledge, mere presence, accidental presence, and mistaken identity. Thus, the Government has identified specific purposes, other than character, for which to admit the Rule 404(b) evidence.

## C. WHETHER THE GOVERNMENT'S SPECIFIC PURPOSES ARE "AT ISSUE" IN THIS CASE

Rule 404(b) is an inclusionary, rather than exclusionary, rule, *United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir.1985), thereby generally allowing "other act" evidence other than to show character. Federal Rules of Evidence 401 and 402 establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the Rules provide otherwise. *Huddleston*, 485 U.S. at 686. *See also, United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991) ("To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide, 'whether the evidence is probative of a material issue other than character.'" (quoting *Huddleston,* 485 U.S. at 686)).

The Court now turns to the question of whether the Government's proposed purpose for Prior Act evidence is probative of a material issue other than character.

*1. Intent/Knowledge*

When a defendant is charged with a specific intent crime, 404(b) evidence is admissible to prove intent, subject to the probative/prejudicial balancing of Fed. R. Evid. 403. *United States v. Johnson,* 27 F.3d 1186, 1192–93 (6th Cir. 1994). Defendant argues that the 404(b) evidence should not be admitted to show intent or knowledge because the Prior Act and the instant case are factually dissimilar and because Defendant was never charged in connection with the Prior Acts.

The Court notes at the outset the specific charges being levied against Defendant. In Count I, Defendant is charged with:

> Devis[ing] or intend[ing] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmit[ting] or caus[ing] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice[.]

18 U.S.C. § 1349. Defendant has also been charged in Count II with Money Laundering, and in Count III with committing or with aiding and abetting others in committing aggravated identity theft under 18 U.S.C. § 1028A. That latter makes it unlawful for any person to, "during and in relation to any felony violation enumerated in subsection (c) [which includes wire fraud], knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1).

In sum, the Government has the burden to prove that Defendant: (1) knowingly and with the intent to defraud, unlawfully used or aided and abetted others in using the identification of another person in a manner affecting interstate and foreign commerce (2) during and in relation to the devising of any scheme to defraud or to obtain money or property through false or fraudulent pretenses, or the transmitting of anything,

7

via wire, radio, or television communication for the purpose of executing such scheme. *See* 18 U.S.C. §§ 2, 1028A.

Since intent and knowledge are essential elements of the charges that the Government must prove, evidence of prior similar conduct is relevant to show intent since "as a matter of logic, it is at least marginally more likely that [Defendant acted] intentionally if he had previous experience" with the same or similar conduct. *United States v. Staten*, 181 F. App'x 151, 155 (3d Cir. 2006). Here, Defendant's involvement in a scheme whereby an unwitting victim's identity was stolen and used to obtain credit presents circumstances substantially similar to the conduct charged in the First Superseding Indictment. As such, the Prior Act evidence is directly relevant to knowledge and intent—it shows that Defendant had previous experience with the use of a stolen identity to defraud others, and that he therefore had the requisite knowledge and intent to commit the crimes charged. *See Staten*, 181 F. App'x at 155.

Turning to Defendant's arguments against admitting the 404(b) evidence, the Court notes that evidence of the Prior Acts is not barred simply because the alleged Prior Acts are not factually identical to the instant case. *See United States v. Benton*, 852 F.2d 1456, 1467 (6th Cir. 1988) ("[T]he prior acts need not duplicate exactly the instant charge, but need only be sufficiently analogous to support an inference of criminal intent."). Additionally, the fact that Defendant was never charged in connection with the Prior Acts is irrelevant. The Sixth Circuit has held that Rule 404(b) evidence of prior involvement in uncharged offenses can nevertheless be relevant and admissible on the issue of intent. *See United States v. Clemis*, 11 F.3d 597, 600 (6th Cir.1993), *cert. denied*, 511 U.S. 1094 (1994).

As such, the Government has articulated a permissible purpose, other than character, for admitting the evidence, and such purpose is relevant to the contested issues of intent and knowledge. *See United States v. Zelinka*, 862 F.2d 92 (6th Cir.1988) (excluding 404(b) evidence because the government "failed to

articulate any theory of admissibility."); *United States v. Bakke,* 942 F.2d 977 (6th Cir.1991) (excluding 404(b) evidence because neither intent, knowledge, nor any related question was a disputed issue.).

### 2. *Absence of Mistake/Mere Presence*

The Court also finds that absence of mistake/mere presence material to this case. A claim of innocent presence or association, such as that apparently made by Defendant, "opens the door" to 404(b) evidence. *Bell,* 516 F.3d at 449 (citing Lattner, 385 F.3d at 957 (citations omitted)). In *United States v. Ismail,* 756 F.2d 1253, the defendant was charged with conspiring to traffic drugs based, in part, on his connection to a known drug dealer after the defendant's name, telephone number, address, and a statement of account were found in the drug dealer's address book. *Id.* at 1254–56. The defendant attempted to claim innocent association with the drug dealer by stating that they had legitimate business ventures. *Id.* at 1257. The Sixth Circuit upheld the district court's decision to allow testimony regarding two previous uncharged drug transactions as evidence of prior bad acts under Rule 404(b). *Id.* at 1258–59. The Sixth Circuit reasoned that the evidence of prior drug transactions could be introduced to prove a scheme or plan to traffic drugs and that proof of such a scheme was probative with respect to the defendant's innocent association claim. *See Id.* at 1259.

The "explanation" provided by Defendant regarding his association with M.J.F., Jr.—that Defendant had no reason to know that M.J.F., Jr. had stolen and been using M.F.'s identity to commit fraud—is similar to the "explanation" employed by the defendant in *Ismail.* Here, as in *Ismail*, the Prior Act sheds light on the true nature of Defendant's association with M.J.F., Jr., making it at least marginally more likely that the two of them were engaged in a fraudulent scheme using identity theft. That Defendant had been involved in previous fraudulent schemes using a stolen identity and seeking to obtain credit diminishes the likelihood that a jury would believe Defendant's claim of innocently associating with M.J.F., Jr.—thereby making evidence of the Prior Acts relevant and admissible.

9

3. *Plan/Method of Operation*

The Government offers the existence of a plan or method of operation, common to both the Prior Act and the instant case, as a material purpose for which to admit the Prior Act evidence. The Government's argument is well-taken. There is significant similarity between the current charges against Defendant and the Prior Act. At the most basic level, a third party using a stolen identity and associated with Defendant appeared and became involved in fraudulent credit transactions. More specific, however, are the connections between Defendant and the individuals using stolen identities in both the Prior Act and the instant case.

In the Prior Act, T.J. was linked to Defendant in several ways: T.J. became involved with Defendant after he told him that he could help Defendant obtain credit and purchase equipment for J&L; Defendant introduced T.J. to the auto dealerships that T.J. would later submit fraudulent credit applications to; T.J. involved Defendant in the fraudulent credit applications by listing J&L as his employer; T.J. applied for and obtained credit accounts for which Defendant, J&L, and Defendant's mother were made authorized cardholders.

In the instant case, M.J.F., Jr. can similarly be linked to Defendant: Defendant was allegedly involved in the fraudulent credit applications since he allegedly took responsibility for providing all the information in the applications; M.J.F., Jr. was introduced into the transaction and to the other parties involved by Defendant; Defendant's mother was again allegedly involved by accepting funds stemming from the fraudulent real estate sale on Defendant's behalf; and Defendant introduced M.J.F., Jr. to other individuals for the purpose of assisting them in procuring a business loan because of M.J.F., Jr.'s "good credit"—similar to T.J.'s similar proposal allegedly made to Defendant in the Prior Act.

10

An additional similarity between the two instances arises from statements made by T.J. and M.J.F., Jr. regarding the marriage problems they both were allegedly experiencing.  In the Prior Act, Defendant allegedly claims that the false T.J. had marital problems and needed to hide assets from his wife.  In the instant case, Defendant claims that M.J.F., Jr. told him that he was going through a divorce and thus needed to deal only in cash.

Based on these similarities, the Court finds that a jury could reasonably find it at least marginally more likely that Defendant was engaged in a plan or method of operation involving the use of identity theft to procure credit—making the existence of such a plan or method a material issue in this case.

Having found that permissible purposes for the Prior Act evidence exist, the Court turns next to issue of whether the probative value of the evidence is outweighed by its prejudicial effect.

### D.  Balancing Probative Value and Prejudicial Effect

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  The Court finds that allowing the Government to use the Prior Act evidence in its case in chief would result in unfair prejudice, while also risking confusion of the issues and perhaps misleading of the jury—which together outweigh the probative value of the Prior Act evidence.

As previously discussed, although 404(b) evidence need not involve a conviction, the fact that Defendant was never charged in the Prior Act is nonetheless relevant for purposes of a Rule 403 analysis. Because Defendant was never charged, the issue of his actual culpability in the Prior Act will loom over the main issues in this case, risking the development of a "trial within a trial."  This could, in turn, confuse the issues for or otherwise mislead the jury—issues expressly contemplated by Rule 403.  While these factors

alone may not outweigh the probative value of the Prior Act evidence, the Court is also to consider unfair prejudice under Rule 403.

Allowing the Prior Act evidence would result in unfair prejudice to Defendant.  When balancing the prejudice and probative value of 404(b) evidence, one factor the Court considers is the closeness in time of the other acts, "though this court has not adopted a bright-line rule concerning remoteness." *Matthews*, 440 F.3d at 830 (citing United States v. Ismail, 756 F.2d 1253, 1260 (6th Cir.1985)); see also Brown, 147 F.3d at 483 (taking into account when the other act occurred in the balancing analysis).   With respect to temporal proximity, the rule is that the prior acts must be reasonably near in time under the facts of the particular case. *See Ismail*, 756 F.2d at 1260 (citations omitted).  There is, however, no absolute maximum number of years that may separate a prior act and the offense charged.  *Ismail*, 756 F.2d at 1260 (citing *United States v. Rubio-Gonzalez*, 674 F.2d 1067, 1075 (5th Cir. 1982) (ten-year old conviction admitted); *United States v. Foley*, 683 F.2d 273, 278 (8th Cir. 1982) (eleven-year old conviction admitted under Rule 404(b)); United *States v. Engleman*, 648 F.2d 473, 479 (8th Cir. 1981) (thirteen-year old conviction admitted)).

Therefore, the probative value of the Prior Act evidence is outweighed by a combination of: (1) unfair prejudice; (2) the danger of confusing the issues' and (3) the danger of misleading the jury.  The Court notes, however, that its Rule 403 analysis is with respect to the Government's use of the Prior Act evidence in its case in chief.  This Opinion and Order does not preclude the Government from introducing the Prior Act evidence through cross-examination of the Defendant, should he invoke his right to testify on his own behalf.  *See U.S. v. Wombold*, 41 Fed. App'x 816 (6th Cir. 2002) (finding that a defendant charged with conspiracy to defraud the department store she was employed by could be cross examined regarding a past, uncharged incident in which she allegedly marked down the price of a rug purchased by her brother). *See also United States v. Reese*, 568 F.2d 1246, 1249–50 (6th Cir.1977) ("allowance of the cross

examination of [defendant charged with transporting stolen property] with reference to past [uncharged] instance of dealing in stolen property . . . [was] proper exercise[] of the trial court's broad discretion.").

## III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion *in limine* to Bar Alleged Prior Acts [dkt 12] is GRANTED IN PART, and DENIED IN PART;

Defendant's Motion is DENIED to the extent that it seeks to bar the Prior Act evidence under any circumstances in this case

Defendant's Motion is GRANTED to the extent that it seeks to bar the Prior Act evidence from being introduced in the Government's case in chief.

IT IS SO ORDERED.

Date:  June 18, 2012

<u>s/Lawrence P. Zatkoff</u>
Lawrence P. Zatkoff
U.S. District Judge