UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JONAS ROGERS,

        Defendant.
                                   /

No. 11-20749

District Judge Sean F. Cox
Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Defendant Jonas Rogers was charged in a superseding indictment with one count of conspiracy to commit wire fraud, 18 U.S.C. § 1349, one count of money laundering, 18 U.S.C. § 1957, and one count of aiding and abetting aggravated identity theft, 18 U.S.C. §§ 1028A and 2. Following a seven-day jury trial, he was convicted of conspiracy to commit wire fraud and money laundering, and acquitted of aggravated identity theft. He was sentence to 78 months imprisonment on each count of conviction, to run concurrently. On direct appeal, the Sixth Circuit affirmed his convictions and sentences. *United States v. Rogers*, 769 F.3d 372 (6th Cir. 2014).

Before the Court at this time is Defendants Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. #98], filed on December 22, 2015, which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be DENIED.

## I.  FACTS

This case arises out of a real estate fraud scheme.  In its opinion in this case, the Sixth Circuit outlined the evidence produced at Defendant Rogers' trial as follows:

> In early May 2007, Margaret Kryvicky, the secretary of the Woodlands Estates Homeowners Association in Bloomfield Hills, Michigan, received a check from a title insurance agency for $3,420 as payment for delinquent association fees due from the owner of property located at 5328 Woodlands Estates Drive. Because the check was issued by a title company, Kryvicky assumed that the property for which the dues were paid had been sold. She thus contacted Dr. Mark Fireman, the person whose name was listed on the check stub, to inform him of deed restrictions and by-laws that applied to the newly acquired property. When she did so, however, Fireman informed her that he had "never bought a house in Woodlands." Concluding that someone had stolen his identity in order to purchase the home, Fireman then contacted the Huntington Woods Police Department to report the impersonation. Eventually, the local police transferred the matter to the Federal Bureau of Investigation (FBI), and that agency's investigation uncovered the facts behind the home purchase.
>
> According to Valeria Bracken, an individual identified during the investigation, she and her "God brother," Jonas Rogers, collaborated on real-estate investment projects in which the two close friends would purchase property, rent it to other individuals, and then profit from the rental income. Bracken testified that Rogers would identify the target properties, select a mortgage company, and negotiate a price for the property before using Bracken's name and credit-worthiness to purchase the home. Eventually, Bracken and the defendant sought to purchase the home located at 5328 Woodlands Estates Drive in Bloomfield Hills.
>
> Although the property was listed for sale at $1,100,000, Rogers negotiated a sale price of $799,000 and, without Bracken's input, selected a mortgage company willing to finance Bracken's purchase of the home, despite the fact that Bracken had annual employment income of only $40,000 as a supportive-services case manager for the Arab–American and Chaldean Council. At the designated time, Rogers then drove Bracken to Decision One Mortgage Company for the closing where Bracken signed two Uniform Residential Loan Application forms, one for a $639,200 mortgage and the

other for a $159,800 mortgage. Even though Bracken had never spoken to or been questioned by a mortgage official concerning her income or her employment, both applications indicated that she was employed not only by the Arab–American and Chaldean Council, but also by 3 Marketeers Production, a company of which Bracken had never heard. Both applications listed Bracken's monthly employment and rental income at $22,809 and indicated that she had two separate bank accounts with balances of $20,000 each. Although Bracken had not supplied any of the blatantly inaccurate information, she signed the loan applications and settlement statement on September 8, 2006, in order "[t]o get the deal done." Relying on the information "provided" by Bracken, Decision One Mortgage Company then wired the requisite funds to a Michigan escrow account from Decision One's headquarters in Charlotte, North Carolina.

At the closing, the sellers transferred to Bracken a check for $11,000, which she then gave to the defendant. Moreover, although Bracken was listed as the purchaser of the house at 5328 Woodlands Estates Drive, she never moved into the dwelling. Instead, defendant Rogers took up residence there in order to "fix[ ] up the property."

Not surprisingly, given Bracken's actual annual income, she was unable to make the mortgage payments on the house or to keep current on the monthly homeowners-association fees on the property. According to Bracken, however, Rogers claimed that he fortuitously was contacted by numerous people—including a Dr. Mark J. Fireman, Jr.—interested in purchasing the property, even though the house was never listed for sale, even though access to the neighborhood was restricted by a guarded gate, and even though "there was never a For Sale sign at the house." Rogers then made all the necessary arrangements for Bracken to sell the property to Fireman, purportedly negotiating the sale price and then selecting Vanguard Title Company as the closing agent. Indeed, when Bracken arrived at Vanguard on April 30, 2007, for the closing, a settlement statement for the sale of the property by Bracken to Fireman for $1,100,000, exclusive of settlement charges and taxes, had already been prepared.

On that closing day, all signs pointed to the prospect that Rogers and Bracken would profit handsomely from their scheme. The identified buyer, Mark J. Fireman, Jr.[1], was to bring with him to the closing a downpayment check for $122,814.67, which, together with funds provided by Credit Suisse Financial Corporation of New Jersey, would lead to issuance of a

-3-

settlement check to Bracken in the amount of $185,600.79. However, the man who identified himself as Fireman did not bring the $122,000 check with him. Nevertheless, the title company president claimed that "the buyer and the seller had worked things out and were going to take care of settling up outside of the closing." Thus, Vanguard simply provided Bracken with a check for $62,786.12, the difference between the amount she was scheduled to receive and the amount of the downpayment check that the buyer failed to provide.

Three days later, on May 3, 2007, at the direction of Rogers, Bracken deposited the closing check into her personal account at National City Bank. Almost immediately, again at Rogers's direction, she began writing checks to herself, to "cash," and to Ernestine Rogers, the defendant's mother. Between May 7, 2007, and May 17, 2007, Bracken wrote the following checks from her account:

May 7, 2007—check 2947 to Ernestine Rogers for $4,900;

May 14, 2007—check 2948 to Ernestine Rogers for $6,000;

May 14, 2007—check 2950 to Valeria D. Bracken for $20,000;

May 16, 2007—check 2952 to Ernestine Rogers for $7,000;

May 16, 2007—check 2953 to Ernestine Rogers for $3,000;

May 17, 2007—check 2954 to Cash for $21,766.

Bracken testified at trial that four of the checks were made out to Rogers's mother because Rogers himself did not have a bank account. Each of those checks was handed directly to Rogers to give to his mother to cash. Rogers also directed Bracken to cash the two checks for $20,000 and $21,766 and hand the proceeds directly to him. Thus, by May 17, 2007, all but $120.12 of the $62,786.12 issued to Bracken at the closing of the sale of the Woodlands Estates property had been delivered to Rogers and converted to cash.

*United States v. Rogers*, 769 F.3d at 374–76.

In the present motion, Defendant raises the following issues:

      I.      The government withheld exculpatory evidence at trial.

      II.     Ineffective assistance of trial counsel.

      III.    Actual innocence of conspiracy to commit wire fraud.

      IV.    Actual innocence of money laundering.

      V.     Violation of due process at sentencing.

      VI.    Prosecutorial misconduct.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the United States Constitution. "[A] defendant must show a fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir.1998) (internal quotation omitted); *Gall v. United States,* 21 F.3d 107, 109 (6th Cir.1994). To prevail under § 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the verdict. *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003). Congress and the Supreme Court have set the bar high for § 2255 petitioners. *See United States v. Frady,* 456 U.S. 152, 166 (1982) ("[T]o obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal").

Where the defendant has failed to assert his claims on direct appeal and thus has

procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent. *Bousley v. United States,* 523 U.S. 614, 622 (1998). "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States,* 334 F.3d 520, 527 -528 (6th Cir. 2003), *citing United States v. Frady,* 456 U.S. at 167-68.

### III. DISCUSSION

#### A. Defendant's Motion is Time-Barred

Motions brought under 28 U.S.C. § 2255 are subject to a one-year statute of limitations, which runs from the latest of the four following events described in the statute as follows:

> "(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28

U.S.C. § 2255(f).

Relevant to Defendant's motion is § (f)(1), the date the judgment of conviction became final. If a defendant appeals his or her conviction to the Court of Appeals, but does not file a petition for writ of certiorari to the Supreme Court, the conviction becomes final ninety days after the Court of Appeals affirms the conviction. *See Sanchez–Castellano v. United States*, 358 F.3d 424, 426-426 (6th Cir.2004) (citing *Clay v. United States*, 537 U.S. 522, 532 (2003)). The 90-day period to file a petition for writ of certiorari in the Supreme Court runs from the date of entry of judgment, not from the date the Court of Appeals issues its mandate. *Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012)(citing *Clay*, 537 U.S. at 529).

Therefore, the statute of limitations in this case expired one year and 90 days after the Sixth Circuit entered it judgment. *See United States v. Smith*, 2016 WL 491837, at *1 (E.D. Mich. Jan. 8, 2016), report and recommendation adopted, 2016 WL 465479 (E.D. Mich. Feb. 8, 2016). The Sixth Circuit entered its judgment on September 8, 2014; therefore the statute of limitations expired on December 7, 2015. Defendant filed the present § 2255 motion on December 22, 2015. It is therefore untimely.[1]

---

[1] Defendant filed a previous § 2255 motion on March 5, 2013, while his case was pending in the Sixth Circuit [Doc. #66]. Adopting the Report and Recommendation of then-Magistrate Judge Laurie Michelson, the Court denied the motion as premature and dismissed it without prejudice [Doc. #90]. On December 4, 2015, three days before the statute of limitations expired, Defendant filed a motion to extend the time for filing his § 2255 motion [Doc. #97]. On January 27, 2016, the Court denied Defendant's motion to extend, citing *United States v. Asakevich*, 810 F.3d 418 (6th Cir. 2016).

"When a petitioner fails to comply with the § 2255 statute of limitations period, the Court may consider whether the one-year statute of limitations should be equitably tolled." *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling only if he establishes that he has been "pursuing his rights diligently," and that "some extraordinary circumstance stood in his way and prevented timely filing." 560 U.S. at 649. This inquiry is made on a case-by-case basis. *Id*. A petitioner bears the burden of showing his entitlement to equitable tolling. *Schumake v. United States*, 2016 WL 540703, at *1–2 (E.D. Mich. Feb. 11, 2016). In this case, Defendant has neither alleged nor shown any "extraordinary circumstances" that prevented him from filing his motion timely. He has not demonstrated that between the time he filed his motion for extension (December 4, 2015) and the time he filed the present motion (December 22, 2015) he garnered any new and material information that was not previously available to him.

An alternative basis for permitting a § 2255 petitioner to bypass the statute of limitations is a claim of actual innocence. In *McQuiggin v. Perkins*, 569 U.S. 383, 386–87 (2013), the Supreme Court held "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ...or, as in this case, expiration of the statute of limitations." Claims of actual innocence are subjected to a demanding standard, and "tenable actual-innocence gateway pleas are rare." *Id*. at 387. In such claim, the Court asks whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial."

*Schlup v. Delo*, 513 U.S. 298, 317 (1995). The Supreme Court has made it clear that the actual innocence standard is "by no means equivalent to the standard of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)," which applies to claims of insufficient evidence.[2] *Schlup,* 513 U.S. at 330. "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Defendant explains his theory of actual innocence in the Memorandum in support of his motion [Doc. #100]. He argues that certain evidence that was either withheld from him, or that his attorney failed to discover and exploit, would have shown that four other people–William Mundy, Valerie Bracken, Alice Parker, and Peter Theodorakakos–were the principals in the conspiracy, and that the evidence that the jury did not hear "would have shown that the Movant was not a leader in this conspiracy, but a person assisting a friend in trouble." *Memorandum*, p.3, Pg. ID 1691. He contends that "[t]he only thing Movant is guilty of is being involved with individuals with bad business practices, but he had no intent to mislead any of the victims, nor did he conspire to mislead any of the victims with another." *Id*.

The evidence that Defendant believes supports his claim of actual innocence includes: (1) a list of visitors to the Woodland Estates Subdivision, which somehow

---

[2] In affirming Defendant's convictions, the Sixth Circuit rejected his claim that there was insufficient evidence to support his convictions.

would have "illustrated how Theodorakakos, Mundy, Parker, Bracken and an unknown officer all had intended to misrepresent themselves in order to influence the decisions of the victims." He adds, "This list would have also led to the identity of the person who fraudulently used the identity of one of the victims." *Id*.; (2) the original listing agreement for the property in question, and the HUD-1 Statement, which would show that the property had been vacant for 36 months, and thus was likely in need of repairs, which Defendant undertook. The HUD-1 Statement, Defendant says, would have shown that Theodorakakos received money from the transaction. *Id*. at 4-5, Pg. ID 1692-93; (3) evidence, not discovered by Defendant's attorney, that Theodorakakos, Mundy, Parker, and Bracken "were all involved in the sale of the property," and that the closing agent gave a false statement at the closing. *Id*. at 6, Pg. ID 1694; (4) the testimony of the original listing agent (whom, he claims, his attorney failed to subpoena), who would have disputed Margaret Kryvicky's testimony that Defendant occupied the property shortly after the original owner left. *Id*. at 6-7, Pg. ID 1694-95.

The thrust of Defendant's argument is that other people were involved in the conspiracy and the money laundering, and while he apparently does not deny committing the *acts* alleged, he claims that he is "actually innocent" because he lacked the *intent*. However, the element of intent is rarely shown by direct evidence, but rather is generally proved circumstantially. "[A] defendant's knowledge of and participation in a conspiracy may be inferred from his conduct and established by circumstantial evidence ." *United*

*States v. Salgado*, 250 F.3d 438, 447 (6th Cir.2001). Moreover, in terms of a defendant's connection to a conspiracy, "proof of a formal agreement is not necessary; a tacit or material understanding among the parties will suffice." *United States v. Avery*, 128 F.3d 966, 970–71 (6th Cir.1997). "Establishing a conspiracy requires only that the defendant 'knew the object of the conspiracy and voluntarily associated himself with it to further its objectives.'" *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014)(quoting *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir.2005)).

In short, the Defendant is arguing legal sufficiency, not factual innocence. He is arguing that the missing evidence could have supported a different, exculpatory inference. But the fact that other people were involved in the conspiracy, or even that other people conceived of the conspiracy, does not exculpate the Defendant based on *his* actions. Indeed, once a conspiracy is shown beyond a reasonable doubt, a defendant's connection to the conspiracy "need only be slight." *Id*. In rejecting Defendant's sufficiency of the evidence claim, the Sixth Circuit remarked that "[h[is contention on this point is premised upon a narrow interpretation of the trial testimony, which the jury declined to adopt." The Court stated, "At the very least, Rogers and Bracken knowingly and voluntarily agreed to purchase the Woodlands Estates home as investment property. Rogers and Bracken also knew that they would not qualify for $799,000 in mortgage obligations on Bracken's $40,000-per-year salary." The evidence that Defendant now argues supports his claim of actual innocence would not change or impeach that fact, or the Sixth

Circuit's ultimate conclusion that "there was ample evidence for the jury to draw the reasonable inference that Rogers had conspired with at least one other individual with the intent to obtain $799,000 through wire transfers under blatantly false pretenses."

Likewise, nothing that Defendant now proffers as "new" evidence would change the *facts* adduced at trial that support his conviction for money laundering. In this regard, the Sixth Circuit stated:

> "As previously discussed, the government adduced sufficient evidence in this matter to justify a rational trier of fact in concluding that Rogers aided Bracken in obtaining more than $62,000 in real-estate settlement payments by participating in the preparation of false, fraudulent loan applications and acquiescing in the transfer of property to an individual who used a stolen identity. Subsequently, at Rogers's direction, Bracken engaged in numerous monetary transactions whereby the proceeds of their fraudulent real estate transactions were deposited into Bracken's own bank account, disbursed to Rogers's mother, and finally, to Rogers himself in cash. In light of these facts, the district court did not err in concluding that a rational jury could find Rogers guilty of money laundering beyond a reasonable doubt." 769 F.3d at 378.

None of Defendant's new facts raises "sufficient doubt about [his] guilt to undermine confidence in the result of the trial." *Schlup v. Delo*, 513 U.S. at 317. Instead, Defendant is merely re-arguing the sufficiency of the evidence claim that the Sixth Circuit has already rejected.

Defendant has shown neither a basis for equitable tolling of the statute of limitations, nor a gateway through that impediment based on actual innocence. His motion must therefore be dismissed as time-barred.

### B. Substantive Issues

Even if this motion were not barred by the statute of limitations, each issue that Defendant raises would fail on its merits.

### 1. Brady Violation

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment...."[3] Even assuming that the prosecutor withheld evidence such as the subdivision's visitor list or the listing agreement, the Defendant's *Brady* claim falters on the issue of materiality.

"Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999)(quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "Prejudice (or materiality) in the *Brady* context is a difficult test to meet...." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir.2002). The key phrase in *Strickler* is "reasonable *probability*," not "reasonable *possibility*." In *Montgomery v. Bobby*, 654 F.3d 668, 678–79 (6th Cir. 2011), the Sixth Circuit explained that "the *Brady* standard is not met if the petitioner shows merely a reasonable possibility that the

---

[3] The Supreme Court has since held that *Brady* imposes a duty to disclose exculpatory evidence "even though there has been no request by the accused." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)).

...
...

suppressed evidence might have produced a different outcome; rather, a reasonable probability is required." *See also United States v. Agurs*, 427 U.S. 97, 109–10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."). As discussed in the preceding section, even if there is a "reasonable possibility" that the allegedly withheld evidence would suggest a more benign inference that Defendant was on the periphery of the conspiracy, it would not have rebutted the facts, on which both the jury and the Sixth Circuit relied, that he knew Bracken would not qualify for a mortgage based on her actual $40,000 per year salary, and that he participated both in fraudulently obtaining the mortgage and receiving financial payment from Bracken. There is no reasonable *probability* that the disclosure of this evidence would have resulted in a different jury verdict.

### 2.   Ineffective Assistance of Trial Counsel

The Sixth Amendment guarantees the accused in a criminal prosecution the right to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668 (1984). *Strickland* sets forth a two-part test for assessing claims of ineffective assistance. First, did the attorney make errors "so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." 466 U.S. at 687. To establish deficient performance under this prong of *Strickland*, the defendant must show that his attorney's representation "fell below an objective standard of reasonableness." *Id.*, at 688. The

second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Even assuming that Defendant's attorney failed the "performance" prong of *Strickland* (however doubtful that might be), Defendant's ineffective assistance claim fails under the "prejudice" prong, for the same reason, discussed above, that he fails the materiality query in his *Brady* claim: there is no reasonable probability that the verdict would have been different but for counsel's alleged errors.

### 3. Actual Innocence

As discussed above with regard to the statute of limitations, Defendant's arguments go more to the issue of sufficiency of the evidence rather that factual innocence. But regardless, Defendant would not be entitled to relief on a stand-alone claim of actual innocence. *See Herrera v. Collins*, 506 U.S. 390, 400-404 (1993).

### 4. Sentencing

Defendant argues that the Court ran afoul of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in applying a sentencing guidelines range based on the amount of loss  Instead, he argues, that determination should have been submitted to the jury to determine under a reasonable doubt standard.

Defendant did not raise this issue in his direct appeal, and therefore it is procedurally defaulted unless he can show cause and prejudice for failing to raise it earlier. *United States v. Frady,* 456 U.S. at 167-68.

In terms of cause, Defendant asserts that his trial counsel was ineffective for failing to "request proper jury instructions concerning sentence enhancement." *Defendant's Memorandum* [Doc. #100], p. 16, Pg. ID 1704. He does not explicitly address the issue of cause and prejudice in relation to his failure to raise the issue on appeal, but presumably he would argue that his appellate counsel was likewise ineffective. But claims of ineffective assistance of both trial and appellate counsel require a showing of prejudice under *Strickland*. In *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999), the Sixth Circuit held that "there can be no constitutional deficiency in appellate counsel's failure to raise meritless issues."

Defendant has not shown prejudice as to either trial or appellate counsel because his argument has no merit. Neither *Apprendi* nor *Alleyne v. United States*, 570 U.S. 99 (2013),[4] applies to factors that neither increase a statutory maximum or a mandatory minimum sentence. *See United States v. Smith*, 749 F.3d 465, 487 (6th Cir. 2014)("But both *Apprendi* and *Alleyne* took care not to disturb the district court's discretionary fact-finding in other circumstances"). "The district court can find the facts, including the

---

[4] *Alleyne* held that any factor that increases a mandatory minimum sentence is an "element" that must be submitted to the jury.

amount of loss, necessary to calculate the appropriate Guidelines range." *United States v. Agbebiyi*, 575 F. App'x 624, 632 (6th Cir. 2014)(citing *United States v. Keller*, 498 F.3d 316, 328 (6th Cir.2007); *see also United States v. Gross*, 626 F.3d 289, 299 (6th Cir.2010)(because the Guidelines range is only advisory, the district court was permitted to make factual findings concerning the amount of tax loss at sentencing). The Court did not err in determining the amount of loss as a sentencing factor.

### 5. Prosecutorial Misconduct

Citing *Berger v. United States*, 295 U.S. 78 (1935), the Defendant argues that the prosecutor improperly argued at sentencing for an enhancement based on leadership role. First, *Berger*, and the many cases that have followed, address the issue of prosecutorial overreach at trial that might improperly inflame the passions of a jury and divert it from deciding a case based only on the facts and the law, not arguments at sentencing. Moreover, on appeal the Sixth Circuit rejected Defendant's challenge to the leadership enhancement, finding "overwhelming evidence that Rogers was the driving force in this scheme...." *Rogers*, 769 F.3d at 383. There was no prosecutorial misconduct.

### IV. CONCLUSION

I recommend that Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. #98] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as

provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

> s/ R. Steven Whalen
> R. STEVEN WHALEN
> UNITED STATES MAGISTRATE JUDGE

Dated: February 1, 2019

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was sent to parties of record on February 1, 2019, electronically and/or by U.S. mail.

                                      s/Carolyn M. Ciesla
                                      Case Manager to the
                                      Honorable R. Steven Whalen